Yes, may it please the Court, I am Carlos Sanchez and I represent Petitioner. This matter arises from a withholding-only proceeding following reinstatement of a removal order. Although the reasonable fear process and the reinstatement process has been streamlined by regulations, once the Department of Homeland Security refers a case to an immigration judge for a withholding-only proceeding, those limitations are not present and it is only limited by subject matter. The judge is still required to hear the evidence and arguments presented and issue a reasoned decision. However, in this case, the immigration judge and, by affirmance, the Board of Immigration Appeals failed to provide a reasoned decision with respect to their nexus analysis, finding that the petitioner was persecuted because of monetary gain and not because of a protected status, that being the son of a legal permanent resident in the United States. The immigration judge states the opinion in a conclusory manner and provides an analysis that is not individualized but is instead categorical by stating that because gang recruitment is not a basis for asylum and the judge finds that extortion is similar to gang recruitment, therefore extortion is not a basis for asylum. The judge is still required to provide an assessment of the law and apply the law to the facts in this case and failed to do so. The Board of Immigration Appeals, by affirmance, has also failed to do so in this case. Even if the immigration judge had provided a reasoned decision in this matter, he still applied the incorrect legal standard for determining whether or not a protected status is a reason for the petitioner's persecution. The immigration judge does state the correct lower a reason standard for nexus as opposed to the one central reason standard for asylum. However, the immigration judge appears to fail to apply the correct standard in this case. The immigration judge uses language because to conclude that there is no nexus in this case. However, such causation language is limited to the one central reason standard. The seminal case interpreting causation in this court is Paris and Mova and in that case, the court found that prior to the amendment of the INA, causation was not a requirement for nexus. However, following that amendment, causation was then required. By the same logic, if the a reason standard is a lower standard than the one central reason standard, then it should no longer require a finding of causation. Or if there is a finding of causation, it may be limited to a but-for cause in this case. Help me out if you can as to the proposed social group and as to the question whether or not the BIA appropriately responded to the proposed social group. Not whether the district, not whether the IJ did, but the BIA. I don't believe the Board of Immigration Appeals addressed whether it is a legally cognizable social group. It would be the immediate family of the petitioner's father. The immediate family has been recognized as a particular social group by this court for some time. And I don't believe the Board of Immigration Appeals addressed that issue. They acknowledged it in a footnote. I think I'm reading from the appropriate decision of the BIA, the December 7, 2020. Applicant fears harm in Guatemala by gang members, claims membership in a family-based particular social group. Applicant, however, has not established the requisite nexus between the pre-emptive persecution and his membership in a particular group. So why is that not sufficient? I do believe that a determination of a member of a particular social group is a fact-based inquiry. And because the immigration judge had not decided whether or not the petitioner was a member of a cognizable social group, the Board of Immigration Appeals was not permitted to make that factual finding. And they would have erred had they done so. But it appears, nonetheless, that it may be now that a matter of LEA, which is cited to by the Board of Immigration Appeals has since been vacated, that the particular social group may be legally cognizable in this case under the appropriate analysis. And describe for me precisely what the proposed social group is. It would be the immediate family of the petitioner, or of the petitioner's father, who is a legal permanent resident in the United States. Now, can you do that in a more generic sense of not just his family, his father? I mean, there are lots of family relationships. And just because my brother might be targeted by gangs doesn't mean I've got a family group. So there are lots of family groups that don't qualify. So why do we have a family group that qualifies as a particularized social group? Because under the precedent in this court, Henrique Rivas, it finds that laws protecting certain groups may be a finding of social distinction. And in this case, in the country of Guatemala, the Constitution does recognize the right in protection to the family. And as such, it does recognize the family as a socially distinct group. Although in this case, the specific family may not have the notoriety of all of Guatemalan society, the proper analysis should be based upon the perception of the society as to whether they recognize that social unit, and in this case, the immediate family, which has been recognized by the Constitution of Guatemala. We were to recognize the particularized social group that's being proposed here, I'm trying to figure out what that means. Does that mean that anyone who has a family relative, a father or whatever, in the United States, receives the money back, and the gang realizes that this is happening, and starts to attack, threaten, persecute the recipient of the money back in Guatemala, is that then a particularized social group whenever that happens? It doesn't require persecution under Díaz-Reynoso v. Barr. The persecution cannot be part of the particular social group. In this case, the familial status would be the particular social group, and the nexus would be the extortion based on the funds that are distributed to the country of origin. Okay, so let me ask the question slightly differently, because I'm not interested in whether or not it's persecution, I'm interested in whether or not we've got a particularized social group. So let me say it again, because I think I wasn't entirely clear, does the proposed social group here mean that whenever we've got a family member in the United States sending money back to the country here in Guatemala, and there's extortion from the recipient who's here in Guatemala, that that's a particularized social group? Potentially, in the given case, it would require a case-by-case assessment as to whether or not there is a probability that the petitioner's life or freedom would be threatened on account of a protected status. In that case, it may very well be familial status, but for the relationship to their family, they would not be targeted in a similar fashion. So potentially, yes. Thank you. If there's no further time, I'd reserve my remaining time for rebuttal. Okay. Thank you, counsel. Mr. Fulton? Thank you, Judge Wardlaw, and good morning, Your Honors. I'm Duncan Fulton for the Attorney General. Even if this PFR was deemed timely, which I'll touch on briefly, the agency properly found no nexus here. Substantial evidence supports that the applicant did not establish the basic motive requirement for nexus, and his evidence does not compel a finding that familial status motivated the harm. The agency cogently found that the extortion was money-driven and not based on a protected ground. Now, before moving in more depth to nexus, I'd first like to address timeliness. Timeliness? As explained in our 28-J letter, Mr. Jesus Pedro did not timely file his PFR within 30 days of the reinstatement order, as required by 8 U.S.C. 1252. The rationale for this is well explained in the Second Circuit's recent decision, Bakhtavai Patel. But essentially, under recent Supreme Court rulings Nasrallah and Guzman Chavez, a withholding-only ruling does not constitute a final order of removal for the purposes of 1252. And the 30-day PFR deadline, of course, runs from the date of a final order of removal, which here is the reinstatement order. Yeah. Now, our case law has not come around to the same degree that the Second Circuit's has. Under our case law, I think it's timely. I think your argument has to be that our case law is no longer any good in light of the Supreme Court decision. That's correct, Judge Fletcher. And our argument is that this Court's ruling in Ortiz-Alfaro is clearly irreconcilable with Nasrallah and Guzman Chavez, as to the timing of when a reinstatement order became final. So in Ortiz-Alfaro, this Court said that it becomes final at the conclusion of withholding-only proceedings, and in so doing, the Court relied on prudential concerns about preserving judicial review for withholding-only proceedings. But under Nasrallah, we now know that... In effect, the Second Circuit's ruling makes these things unreviewable. I mean, nobody's going to comply with that 30-day deadline in the circumstances comparable to this case. Well, and it also undermines all the pending petitions for review of withholding of removal only now, because no one knew that some court would decide that was the rule. Yes, of course, and we definitely understand that concern, and that is why we are asking that this jurisdictional rule be applied prospectively, just so individuals have noticed that this is now the rule. So in this case, like many were arguing that, this case could, can, and should be denied on the merits under a de la Rosa approach, as this Court recently did, where it can assume statutory jurisdiction arguendo and deny on the merits question. So we share the Court's concern about preserving judicial review and giving fair notice to individuals. But essentially, in Guzman-Chavez, the Court expressly rejected that finality of a reinstatement order only occurs at the completion of withholding-only proceedings. So from Guzman-Chavez, we know that a reinstatement order becomes administratively final at the proceedings are complete, i.e., when the immigration officer finalizes and determines whether there are any valid objections to reinstatement, but that is before withholding-only proceedings complete. So it's our position that Ortiz-Alfaro is now clearly irreconcilable with these cases. I would like to address Nexus, however, unless the Court has any additional questions about In that case, I'll move to Nexus. And in this case, the record does not compel a contrary finding regarding the agency's valid no-Nexus ruling. So the evidence here does not compel a finding that familial status was a reason motivating the opportunistic extortion. Okay. Of course, wanting money is a reason, and that's obviously a reason. That doesn't exclude the possibility of another reason, of course. So the fact that there was money, that's not the end of the inquiry. We do, of course, have a family relationship. The reason that the petitioner has the money and is being extorted is because he's getting it from his father. So this family unit, social group, is fluid, difficult. The articulation and the various decisions in various circumstances have always been hard for me to understand. If I were just talking ordinary English, it sounds to me he's being targeted because of his family. I mean, this is not some stranger who sent him the money. It's his father who sent him the money. So help me understand why, with the term of art of social group under the statute, this is not a social group. Yes, Your Honor. I'm happy to explain. The issue here is that this case had an individualized finding about the game's motive. So here, Your Honor is correct that family status can be a motive. But in this case, the immigration judge found that the motive was because it was raising money for its criminal operations. No, you did not take my point. I understand and I'm perfectly willing to concede that a motivation is money. We get that. That's obvious. But that doesn't mean there cannot be something else going on. There cannot be another reason. Now, if you just look at this and we're not talking law, we're just talking sense. Well, the whole complex is a reason he's being targeted is that his father is sending him the money. So tell me why that does not then include somehow a reason because there's a family social group involved. Yes, Your Honor. So we know from Barajas-Romero, for instance, that under the A reason standard for nexus, which does apply here, the persecutor must care about the particularized motive that is a protected ground. So Your Honor is right that the father was sending him money, but the immigration judge reasonably found here that the father, even though he was the source of the wealth, that family status did not matter to the gang in this case. It could have been anyone sending him money from the United States. It could have been a friend, a former colleague, a romantic interest. It could have even been a stranger who accidentally used the wrong wire account. But the gang didn't care about the identity of the father. All it cared about was that money was being sent because they were trying to fund their criminal operations. Isn't it more that the gang also was aware of the father's legal status in the United States and that that's the reason they sought him out? Because they assume that if you have legal status in the United States, you're going to be able to send more money, have more money, earn more money. So even though ultimately they want the money, they're looking at this guy and not another guy, because this guy's father is a legal permanent resident. Your Honor, that's not what the immigration judge found. And since the standard here is that the record must compel that finding, that's not how the court should rule in this case. Because again, even if the status had to do with some kind of legal status, that could have been any individual with a legal status. The gang simply didn't care about that fact. They just cared about the fact that there was wealth. And we know from this court's case law, Flores-Vega, for instance, Latino, a number of cases, that wealth is not a basis. So even given that status, that's not what the gang cared about. And that's the standard under Barajas-Romero in all these cases. So we know here that under the substantial evidence standard, motive is what really matters. And for instance, in Flores-Vega, which is an a-reason case after Barajas-Romero in this court, the petitioner and his family testified that the gang would think his family was wealthy because of U.S. ties and targeted him. That's exactly the situation Your Honor just asked about, and it does exist in this case. But there, the court found that under the substantial evidence standard, there was simply no evidence of anything but money-based or generalized gang harm. And that's insufficient. So even if the record could have compelled, I'm sorry, could have supported a finding that the family status was a-reason, it does not compel that finding. The immigration judge reasonably considered the evidence and reasonably rejected that finding. We know that under, the motive requirement goes back all the way to Elias Dikarius, where it says, before conducting a mixed motive analysis, there has to be a protected ground. And that's not what happened here. We have no mixed motives to analyze because the immigration judge properly looked at the Barajas-Romero specifically said that the persecutor must care about a political opinion, for instance. And if it's not, there is no nexus and there's no need to apply a mixed motive analysis. The immigration judge looked at the facts of this case and cited numerous statements in the testimony from the petitioner that said that money was the motive here and it was not the family status. Help me out if you can. I realize we're at the end of the time. What would be a protected social group as a family? What would be a circumstance in which the family is a particularized social group? Well, Your Honor, it's hard for me to answer that question in this case because- I'm not asking you in this case. I'm asking you when, whenever, wherever. What would be a good group? It's a fact-dependent inquiry and there are certain circumstances where a family can be particularized, have social distinction. And, for instance, in the matter of LEA 1, the court explained that, for instance, the Romanoff family could be one instance where there's a defined social group that was the basis of harm sought there. And so there are instances where that's possible, but it's simply not an issue in this case because the agency did not reach that finding. It found no reason to address the cognizability. So, thank you so much, Your Honors. We simply ask this petition for review be denied. All right, thank you very much. Mr. Sanchez, you have about a minute left. Unmute yourself, please. The Nexus inquiry should not be limited to solely a causation from the- The analysis and the scope of the analysis should be greater than that and find that but for his father sending him money, he would not have been targeted. And even under the more stringent essential reason standard, there still is a Nexus finding. This is not a minor role on his protected status. It's integrally intertwined with the cause for his persecution. And so I think a case that Garcia v. Wilkinson is prescient in this matter, given that the court found the BIA error in finding that they're required to be a finding of animus towards the family. That is not required in this analysis, and the petitioner has stated a sufficient basis in this case. All right, thank you very much, counsel. Jesus Pedro v. Garland is submitted.
judges: WARDLAW, FLETCHER, Korman